UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| TEXAS TRANSLAND, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 7:19-cv-00129-O |
| DAVIDON, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Davidon, Inc.'s ("Defendant") Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Brief ("Motion to Dismiss") (ECF No. 4), filed November 25, 2019; Plaintiff Texas Transland, LLC's ("Plaintiff") Response and Appendix in Support (ECF Nos. 7–8), filed December 17, 2019; and Defendant's Reply (ECF No. 9), filed December 31, 2019. Having considered the motion, briefing, and applicable law, the Court finds that Defendant's Motion to Dismiss should be and is hereby **GRANTED in part** and **DENIED in part**. Plaintiff's breach-of-fiduciary-duty and unfair-competition claims, which are preempted by Texas Uniform Trade Secrets Act ("TUTSA"), are **DISMISSED with prejudice**. The Court retains jurisdiction over Plaintiff's trade-secret-misappropriation and breach-of-contract claims, as Plaintiff has pleaded facts sufficient to establish the Court's personal jurisdiction over Defendant.

### I.  FACTUAL BACKGROUND

Defendant, a corporation founded and incorporated in Georgia, is "in the business of manufacturing and selling various products used primarily in the agricultural industry." Def.'s Mot. Dismiss 1, ECF No. 4. Plaintiff, "a Texas limited liability company with its principal place of business in Wichita Falls, Texas[,] . . . is engaged in the business of developing, manufacturing,

1

marketing, and selling aerial application systems and components, used to disperse fertilizer, pesticides, herbicides and similar substances from aircraft." Pl.'s Original Pet. ¶¶ 3, 8, ECF No. 1 Ex. 1. Plaintiff and Defendant allegedly entered into a contract (the "Agreement"), agreeing that "[Plaintiff] would pay [Defendant] $200,000 in cash and $200,000 in the form of a promissory note, and in return, [Plaintiff] would acquire designated assets from [Defendant]." *Id.* ¶ 10. Plaintiff claims the purpose of the Agreement was for Plaintiff to acquire Defendant's "Hi-Tek Product Line, including all of [Defendant's] trade secrets used to manufacture the Hi-Tek Product Line" rather than trying to "independently develop a similar product line" to compete with Defendant. *Id.* ¶¶ 11, 13. Accordingly, Plaintiff paid "the vast majority" of the contract price "to acquir[e] the Trade Secrets, so that [Plaintiff] could exclusively manufacture and market the Hi-Tek Product Line and enjoy the same competitive advantage [Defendant] had previously enjoyed." *Id.* ¶ 13.

Defendant agreed to continue manufacturing their Hi-Tek Products on Plaintiff's behalf for at least six months, while Plaintiff prepared to take over the manufacturing process or find another manufacturer. *Id.* ¶ 14. After executing the Agreement, Plaintiff submitted orders and Defendant fulfilled them. *Id.* ¶ 15. Within slightly over two years, Defendant fulfilled thirty orders, which together exceeded $130,000. *Id.* ¶ 16. During this time, Plaintiff "authorized [Defendant] to retain and use some of the Trade Secrets for the sole purpose of manufacturing the Hi-Tek Products for [Plaintiff]." *Id.* ¶ 17.

In 2019, Defendant reentered the business of manufacturing and selling aerial application systems and components, launching what they now call "MaXX" Products. *Id.* ¶ 19. Upon learning of the new products through Defendant's marketing materials—which "stated that [Defendant] was 'reborn' and emphasized [Defendant's] success in developing the Hi-Tek Product Line"— Plaintiff "ordered several MaXX Products through a Texas retailer for the purpose of determining

the extent of [Defendant's] misappropriation." *Id.* ¶¶ 20, 22. Plaintiff received the products and "confirmed the . . . MaXX Products were essentially identical to the Hi-Tek Products." *Id.* ¶ 22.

Plaintiff filed suit against Defendant, raising four claims: (1) trade secret misappropriation; (2) breach of contract; (3) breach of fiduciary duty; and (4) unfair competition. *Id.* ¶¶ 33–48. At the time Plaintiff filed its state court petition, Defendant was "marketing [the] MaXX line of products throughout the United States, including Texas." *Id.* ¶ 31.

Defendant timely removed the suit on the basis of diversity jurisdiction. *See* Notice of Removal, ECF No. 1. Defendant then filed a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction, arguing that the Court lacks personal jurisdiction over Defendant. Def.'s Mot. Dismiss, ECF No. 4.

## II. LEGAL STANDARD

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the burden of proof is on the plaintiff as the party seeking to invoke the district court's jurisdiction. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). "[T]he party who bears the burden need only present a *prima facie* case for personal jurisdiction; proof by a preponderance of the evidence is not required." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985). Furthermore, "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* at 546.

"A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir.

3

2010). "Because Texas's long-arm statute reaches to the constitutional limits, the question [a federal court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id.*

The exercise of "[p]ersonal jurisdiction comports with due process when first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When a nonresident defendant "purposefully avail[s] [it]self of the benefits of the forum state, so that [it] 'should reasonably anticipate being haled into court' there," the defendant's conduct establishes minimum contacts. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) [hereinafter *Burger King*]; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction." *Clemens*, 615 F.3d at 378. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). "Specific jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (alteration in original) (internal citations omitted).

If a plaintiff establishes that a nonresident defendant has the requisite minimum contacts with a forum state, the presiding court must then determine whether the exercise of jurisdiction

4

over the nonresident defendant "does not offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co.*, 480 U.S. at 105 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). For this determination, courts balance "the burden on the defendant having to litigate in the forum; the forum state's interest in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

## III. ANALYSIS

Plaintiff raises four claims against Defendant: (1) trade secret misappropriation; (2) breach of contract; (3) breach of fiduciary duty; and (4) unfair competition. Pl.'s Original Pet. ¶¶ 33–48, ECF No. 1 Ex. 1. Having reviewed Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and the related briefing, the Court **DISMISSES with prejudice** Plaintiff's breach-of-fiduciary-duty and unfair-competition claims as preempted. The Court retains jurisdiction over Plaintiff's trade-secret-misappropriation and breach-of-contract claims, as Plaintiff has made a prima facie showing that Defendant has minimum contacts with the State of Texas relating to both claims.

### A. Preemption

The Texas Uniform Trade Secrets Act's preemption provision "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tex. Civ. Prac. & Rem. Code § 134A.007(a). Plaintiff raises two such tort claims: breach of fiduciary duty and unfair competition. Pl.'s Original Pet. ¶¶ 43–48, ECF No. 1 Ex. 1; *see also Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 146 (Tex. 2019) (listing breach of fiduciary duty and unfair competition as tort claims). In support of these claims, Plaintiff argues

5

that Defendant "owed [Plaintiff] a fiduciary duty to maintain the Trade Secrets and use the same only for the benefit of [Plaintiff]," and "[Defendant] committed a breach of such duty, by using the [Plaintiff's] Trade Secrets for its own unauthorized use and benefit and in a manner calculated to harm [Plaintiff]." Pl.'s Original Pet. ¶¶ 44, 48, ECF No. 1 Ex. 1. Because the "gravamen" of Plaintiff's tort claims "duplicates" its trade-secret-misappropriation claim, the breach-of-fiduciary-duty and unfair-competition claims are preempted. *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App.—Corpus Christi 2017, no pet.) ("Where a claim is based on a misappropriation of a trade secret, then it is preempted by the Texas Uniform Trade Secrets Act.").

However, because TUTSA's exemption provision does not apply to "contractual remedies, whether or not based upon misappropriation of a trade secret," Plaintiff's breach-of-contract claim stands. Tex. Civ. Prac. & Rem. Code § 134A.007(b)(1).

### B.  Personal Jurisdiction

Given the dismissal of Plaintiff's tort claims, the Court proceeds to analyze whether it has personal jurisdiction over Plaintiff's trade-secret-misappropriation and breach-of-contract claims. Defendant argues that the Court does not have general or specific jurisdiction because, among other arguments: (1) Defendant is not a citizen of Texas; (2) Defendant has not sought or obtained authorization to transact business within Texas; (3) Defendant has not maintained a place of business in Texas; (4) Defendant has not owned property or paid any taxes in Texas; (5) Defendant has no office, telephone number, telephone listing, employees, equipment, vendor, asset (personal or real), or bank accounts in Texas; (6) Defendant has no registered agent in Texas; and (7) Defendant has not owned, sold or leased any real property in Texas. Def.'s Mot. Dismiss 6, ECF No. 4. Plaintiff does not argue that the Court has general jurisdiction. *See* Pl.'s Resp. 6, ECF No.

6

7. Rather, Plaintiff argues for specific jurisdiction based primarily on two facts: (1) Defendant sold its assets to Plaintiff (and engaged in transactions associated with the purchases) in Texas; and (2) Defendant sent the products at issue to a third-party Texas retailer. *See id.*

Because Plaintiff "did not argue the existence of general jurisdiction," the Court's "analysis is limited to whether [Plaintiff's] allegations support specific jurisdiction, which exists when a nonresident defendant has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Burger King*, 471 U.S. at 472). A court may exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum [state]" even "[i]f a defendant has relatively few contacts" there. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (internal citation omitted). "[B]ut merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Defendant contends that Plaintiff's "unilateral activities," Defendant's "passive" marketing, and the Parties' "mere[] contracting"[1] are all insufficient to establish minimum contacts arising out of Defendant's alleged trade secret misappropriation and breach of contract. Def.'s

---

[1] Defendant also "denies that Plaintiff has alleged, or can prove, the existence, enforceability, or breach of any alleged 'Purchase Agreement' or 'Manufacturing Agreement,'" and it argues that "Plaintiff's conclusory allegations and legal conclusions . . . should not support this Court's exercise of personal jurisdiction" over Defendant. Def.'s Mot. Dismiss 12 n.3, ECF No. 4 (citing Pl.'s Original Pet. Ex. A(1), ECF No. 1). Though the Parties' emails do not specifically reference a "Purchase Agreement" or Manufacturing Agreement," Plaintiff's presentation of the Parties' negotiations and Defendant's fulfillment of thirty orders constitutes more than "conclusory allegations" that a court need not credit. *Id.* (citing *Panda Brandywine*, 253 F.3d at 869). Whether the alleged agreement is enforceable is a merits issue; thus, the Court need not resolve it at the 12(b)(2) stage. *See Seiferth*, 472 F.3d at 276 ("Though this statement may be true, it does not bear on the jurisdictional question, but rather goes to the merits of [the plaintiff's] claims.").

Mot. Dismiss 11–13, ECF No. 4. In a sense, Defendant is correct; these allegations alone would be insufficient.

However, additional facts demonstrate that Defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations omitted). Specifically, by "accept[ing] purchase orders issued from [Plaintiff] in Texas and deliver[ing] manufactured goods to [Plaintiff] in Texas," Pl.'s Resp. 6, ECF No. 7, Defendant "create[d] a substantial connection" with Texas, *Walden v. Fiore*, 571 U.S. 277, 284 (2014). *See also Burger King*, 471 U.S. at 479 (recognizing that "a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," and instructing lower courts to consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when determining "whether the defendant purposefully established minimum contacts within the forum" (internal citations omitted)). Likewise, by delivering its MaXX products to Plaintiff's third-party Texas retailer, Defendant again "purposefully reach[ed] out beyond [its] State" and into Texas. *Walden*, 571 U.S. at 285 (internal citation omitted); *see also id.* (stating that "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact"). Given that Defendant has "purposefully derive[d] benefit from [its] interstate activities," it would "be unfair to allow [Defendant] to escape having to account" for those activities in the forum in which they occurred. *Burger King*, 471 U.S. at 473–74.

The Court must next consider the "nexus" between Defendant's Texas contacts and each cause of action. *Clemens*, 615 F.3d at 378. "If a defendant does not have enough contacts to justify

the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts." *Seiferth*, 472 F.3d at 274–75. Plaintiff "alleges breaches of an agreement formed, in part, in Texas and alleges it acquired the trade secrets by virtue of this agreement." Pl.'s Resp. 6, ECF No. 7. Further, Plaintiff asserts that, by "selling and delivering MaXX products in Texas," Defendant misappropriated the trade secrets and breached the Agreement. *Id.* at 7. Together, these facts establish a "sufficient nexus" between Defendant's contacts with Texas and Plaintiff's two claims. *Clemens*, 615 F.3d at 378.

Finally, Defendant has not "present[ed] a compelling case," *Burger King*, 471 U.S. at 477, that the Court's exercise of specific jurisdiction would "offend 'traditional notions of fair play and substantial justice,'" *Asahi Metal Indus. Co.*, 480 U.S. at 105 (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Defendant claims that it is "patently unfair and unreasonable for the Court to exercise personal jurisdiction over [Defendant] under any circumstances." Def.'s Mot. Dismiss 14, ECF No. 4. Defendant cites three reasons: (1) "the burden on [Defendant] will be substantial," as litigation in Texas will "increase the financial burden on [Defendant] and will require additional time and expense," (2) "Plaintiff can pursue the relief it seeks in Georgia as easily as it can pursue that relief in Texas," and (3) "[g]iven [Defendant's] complete lack of any substantial and continuous contacts with Texas and the balance of the foregoing factors, the exercise of jurisdiction by a Texas court over [Defendant] is not in the best interests of the several states and would be inconsistent with the constitutional requirements of due process." *Id.* at 14–15.

Defendant has failed to establish a "burden upon the defendant that outweighs the interests of Texas, and of the plaintiff, in litigating this action in Texas." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Because Defendant shipped its products to Texas—allegedly misappropriating

Plaintiff's trade secrets and breaching the Agreement—the relevant events "took place in whole or in part in Texas." *Id.* Thus, "Texas, as a forum state, . . . has an interest in adjudicating [this] dispute[, which] involves a sale of goods to a Texas consumer." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993). Furthermore, it is not unreasonable to ask Defendant to litigate in Texas, "where the company avails itself of the benefit of that state's market." *Luv N' Care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 465, 474 (5th Cir. 2006); *cf. Ruston Gas Turbines, Inc.*, 9 F.3d at 421 ("It is not unfair or unjust to require the manufacturer of a good that is knowingly delivered to a specific state to respond to a lawsuit arising out of defects in the good in that state."). Finally, given the Court's determination that Defendant has sufficient contacts with Texas, the Court's exercise of specific jurisdiction would not conflict with the interests of the several states nor violate Defendant's due process rights.

"It is rare to say the assertion [of personal jurisdiction] is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc.*, 195 F.3d at 215. And here, Defendant has not "present[ed] a compelling case," for reaching that unlikely conclusion. *Burger King*, 471 U.S. at 477. Thus, "[v]iewing all the facts favorably toward jurisdiction, as [the Court] must," the Court concludes Plaintiff has made a prima facie case that the Court has specific personal jurisdiction over its trade-secret-misappropriation and breach-of-contract claims. *Seiferth*, 472 F.3d at 276.

### IV. CONCLUSION

The Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss. Plaintiff's breach-of-fiduciary-duty and unfair-competition claims are **DISMISSED** as preempted by TUTSA. The Court exercises jurisdiction over Plaintiff's trade-secret-misappropriation and breach-of-contract claims.

**SO ORDERED** on this **17th day** of **March, 2020.**

10

Reed O'Connor
UNITED STATES DISTRICT JUDGE